The PEOPLE OF THE STATE OF NEW YORK ex rel. SAMUEL LESSER, Petitioner, *v.* WILLIAM HUNT, as Warden of Attica State Prison, Attica, New York, Respondent.*

Supreme Court, Special Term, Erie County, October 10, 1938.

*Samuel Lesser*, relator, in person.

*John J. Bennett, Jr., Attorney-General [James A. Noonan* of counsel], for the respondent.

* Affd., 256 App. Div. 1048.

MacGregor, J. The petitioner was indicted by the grand jury of New York county of the crime of kidnaping on or about October 29, 1931. He was brought to trial at a term of the Court of General Sessions in New York City, and on March 16, 1932, he was convicted. Thereafter a motion for a new trial upon the ground of newly-discovered evidence was made and denied. He was thereafter sentenced as a third offender to fifty years' imprisonment. Thereafter an appeal was taken from the judgment of conviction and from the order denying the motion for a new trial upon the ground of newly-discovered evidence to the Appellate Division, and upon such appeal the judgment and said order were affirmed. (*sub nom. People* v. *Lipsky*, 238 App. Div. 777.)

The relator has instituted various proceedings from time to time since his conviction attacking its legality, but has been unsuccessful.

I have read the voluminous briefs and documents presented upon the argument of the writ, and I can find no basis for the release of the prisoner.

It is well settled in this State that when a prisoner is brought before a court upon a writ of habeas corpus, the power of the court is limited to an inquiry as to the jurisdiction of the offense and of the person by the court in which the prisoner was tried, and if it appears that the power existed to pronounce the judgment the writ must be dismissed. (*People ex rel. Hubert* v. *Kaiser*, 206 N. Y. 46.)

In the case of *People ex rel. Scharff* v. *Frost* (198 N. Y. 110) the relator in a habeas corpus proceeding pleaded guilty to an indictment charging him with the crime of seduction under promise of marriage. He was remanded for sentence and subsequently he married the woman upon whose complaint the indictment had been found. This marriage took place with the approval and consent of the court. Subsequently the court, being held by the same judge who had presided when the plea of guilty was received and who was advised of such marriage, suspended judgment and released the relator from custody. About a year later the suspension of sentence was revoked and the Court of General Sessions, held by the same judge, sentenced the relator to imprisonment. At the time of the indictment the provisions of the Penal Law were: " A person who, under promise of marriage, seduces and has sexual intercourse with an unmarried female of previous chaste character, is punishable by imprisonment for not more than five years, or by a fine of not more than one thousand dollars, or by both." This provision was qualified by another provision reading: " The subsequent intermarriage of the parties, or the lapse of two years after the commission of the offense before the finding of an indictment, is a bar to a prosecution for a violation of the last section." It was held by the Court

of Appeals that it was error for the Court of General Sessions to pronounce judgment against him it having been apprised of the marriage. However, the court said: " There was not, however, such an utter lack of jurisdiction or power to pronounce judgment as entitled the relator to relief by habeas corpus. The Court of General Sessions had jurisdiction of the defendant and of the offense, and under the plea of guilty was empowered to pronounce the sentence which it did pronounce unless the fact of the defendant's marriage to the complainant was established by competent proof. No one would think of questioning its jurisdiction to render the judgment if it had determined that no marriage had in fact taken place. The mere fact that the marriage is admitted in this habeas corpus proceeding cannot affect the question of the court's jurisdiction. Under these circumstances we feel constrained to hold that the relator has mistaken his remedy and has not shown himself to be entitled to release by habeas corpus. As it does not appear that he made any motion in arrest of judgment, or, indeed, that he has taken any appeal, and as the time for an appeal must have expired, the case is obviously a proper one for the exercise of executive clemency under the view which we have taken as to the proper construction of the statute."

It is said in *People ex rel. Tweed* v. *Liscomb* (60 N. Y. 559, 570): " If the judgment is merely erroneous, the court having given a wrong judgment when it had jurisdiction, the party aggrieved can only have relief by writ of error, or other process of review. He cannot be relieved summarily by *habeas corpus.*"

Relator states in his brief: " The only question on this proceeding as stated to the court at the hearing, was whether the commitment can be considered a legal one when it was indisputably shown that it was based upon an illegal proceeding."

In *People ex rel. Haines* v. *Hunt* (229 App. Div. 419) the statute under which the relator was convicted was held unconstitutional. Without awaiting discharge he escaped and thereafter was indicted and convicted of the crime of escape. He procured a writ of habeas corpus seeking his release upon the ground that he could not be convicted of escape because at the time he was being illegally detained. The court held: " The relator was regularly convicted and sentenced for the crime of escape, upon indictment and plea of guilty in a court of competent jurisdiction; and if he had any remedy barring judgment of conviction for that offense such remedy was by motion in arrest of judgment or by appeal from the judgment. Under these circumstances the relator has mistaken his remedy and has not shown himself to be entitled to release from custody by habeas corpus."

In *People ex rel. Davis* v. *Jennings* (133 Misc. 538) the prisoner sought release by means of habeas corpus upon the ground that the court had no jurisdiction to sentence him to prison since he was under seventeen years of age and could only be guilty of juvenile delinquency. Upon the return of the writ it was sought to be shown by affidavits and witnesses that he was actually under the age of seventeen, although he had so stated at the time of being convicted. Such evidence was not considered inasmuch as he had been committed and was detained by virtue of the final judgment of a competent tribunal of criminal jurisdiction.

Many other cases might be cited all going to the point that the remedy of habeas corpus is not applicable when the prisoner is held by virtue of a final judgment of a court of competent jurisdiction of the offense and the prisoner.

The contention of the relator is that it being shown upon the motion for a new trial upon the ground of newly-discovered evidence that the testimony of a witness upon the trial was not true and that affidavits of other persons were considered by the court upon such motion in opposition to the affidavits presented by the relator upon such motion that the court was bound to grant the motion for a new trial, also that the relator was entitled to be confronted by the persons who in effect testified against him through affidavits presented upon such motion.

The motion for a new trial upon the ground of newly-discovered evidence was not a part of the trial. The motion was made for the purpose of convincing the court that a new trial should be granted. The court was not bound to take testimony. (Code Crim. Proc. § 465, subd. 7.) The court may or may not have been in error in not arriving at a conclusion that the motion should have been granted upon the affidavits submitted to it. It does not lie within the province of this court in the consideration of this writ to pronounce judgment as to that fact. The determination of that question was within the province of the appellate court and that court has determined that the trial court exercised proper discretion.

A motion for a new trial upon the ground of newly-discovered evidence under section 465 of the Code of Criminal Procedure is addressed to the discretion of the court. (*People* v. *Patrick*, 182 N. Y. 131.)

He makes further claim that his constitutional rights have been interfered with and that he has been deprived of due process of law. " Due process of law has been defined ' as law in its regular course of administration through courts of justice.' (2 Kent. Com. 13.)" (*Matter of Barnes*, 204 N. Y. 108, 114.)

644

The relator cites the decision of the United States Supreme Court in *Mooney* v. *Holohan* (294 U. S. 103). That case is not pertinent. In that case the claim was that the convicton had been obtained by the use of testimony known to the prosecution to be perjured and that there was a deliberate suppression of evidence to impeach that testimony. It was further contended that he was deprived of his liberty without due process of law by reason of the failure of the State, under the circumstances, to provide any corrective judicial process by which a conviction so obtained might be set aside.

In the present case the claim perjured testimony was considered by the trial court upon the motion for a new trial upon the ground of newly-discovered evidence, the granting of which was a discretionary matter under the Code of Criminal Procedure of this State, and furthermore the opportunity was given to appeal from the exercise of such discretion advantage of which was taken by the relator and upon such appeal the judicial discretion exercised by the trial court was approved.

There has been no denial of mediums for the obtaining of the rights of the relator through the orderly processes of the administration of justice and thus the relator has not been deprived of his liberty without due process of law.

The writ is dismissed and the prisoner remanded.