**UNITED STATES ex rel. LESSER v. PEOPLE OF STATE OF NEW YORK et al.**

No. 487.

District Court, W. D. New York.

Sept. 3, 1940.

Samuel Lesser, in pro. per.

John J. Bennett, Jr., Atty. Gen., and James A. Noonan, Asst. Atty. Gen., for William Hunt, warden.

KNIGHT, District Judge.

This is a petition for a writ of habeas corpus. On February 19, 1932, in the City of New York, N. Y., the relator was convicted of the crime of kidnapping. He had previously been twice convicted of a felony and as a third offender, was sentenced to be imprisoned for fifty years. Shortly thereafter, relator made a motion for a new trial on the ground of newly-discovered evidence. On June 2, 1932, this motion was denied. In a written opinion rendered by the trial judge, it was found that the evidence submitted upon the motion was not such as probably would change the verdict. An appeal was taken from the judgment of conviction and order denying motion for a new trial, and the judgment and order were affirmed.

People v. Lipsky, 238 App.Div. 777, 262 N.Y.S. 881. The Court of Appeals denied leave to appeal to that court. In February 1935, the County Court of the County of Clinton denied a motion by this relator for a discharge on a writ of habeas corpus and the decision of the County Court was sustained on appeal. State ex rel. Lesser v. Murphy, 249 App.Div. 669, 291 N.Y.S. 370. Such last-mentioned application was based upon the contention that the trial judge following the trial of the charge for kidnapping had granted a motion for a new trial. The record was held to disclose that this was not a fact. Some application to the Governor of the State of New York for relief, the nature of which is not disclosed, was denied.

An application for a writ was made before Hon. Harold P. Burke of this district on July 15, 1938. The writ was ordered dismissed. United States ex rel. Lesser v. Hunt, D.C., 25 F.Supp. 646, 647. The court wrote a short opinion holding that the relator should first have exhausted "the remedies afforded by the State for determining whether he is illegally restrained of his liberty." Thereafter, an application was made for a writ before the Hon. Clarence MacGregor, Justice of the Supreme Court of the State of New York, and in a comprehensive decision on October 10, 1938, the writ was ordered dismissed. People ex rel. Lesser v. Hunt, 171 Misc. 640, 14 N.Y.S.2d 532. On appeal the lower court was upheld (State ex rel. Lesser v. Hunt, 256 App.Div. 1048, 10 N.Y.S.2d 922) and the Court of Appeals denied the right to further appeal. 280 N.Y. 853, 21 N.E.2d 220.

This application is based on the ground that the conviction was based on false and perjured testimony and that in consequence thereof petitioner has been deprived of his liberty without due process of law. In support of this application the relator has submitted the affidavits of various individuals and certain certificates of public officers. It appears that all of the aforesaid affidavits, save two, were submitted upon the motion for a new trial.

As I construe the proofs here submitted by the relator, it is his claim that they show that the testimony given by the complainant on the trial relative to the beginning of his acquaintance with the relator was untrue; that the testimony that there was no garage at the place claimed by relator to have been occupied by complainant and himself was untrue; and that the complainant has made various admissions that he had not been kidnapped and that he was forced by the police to lay the charge.

The trial judge had before him the complete record of the trial. The proceedings before me contain no part of the testimony there given save short excerpts from that of the complainant, relator and two other witnesses; five questions put by jurors and also a brief excerpt from the charge. Granting of this writ would release relator and further prosecution could not be had. If the affidavits now submitted are such as would probably have not changed the verdict, the writ must be denied. To determine the weight of such affidavits, all of the testimony given upon the trial should be before the court. However, assuming the contrary, and considering these various affidavits and certificates in the light of their alleged connection, it seems obvious that denial of due process of law is not shown.

Complainant testified that he did not know the relator. Relator testified that he had been acquainted with complainant for many years and had operated with him a garage on West 28th Street and Railroad Avenue, Coney Island, New York. On the trial Bodine, a former employee of relator, confirmed the latter's statement. On the trial, one Ward testified that she owned property at the corner of West 28th Street and Railroad Avenue, Coney Island, New York, and that there had never been any public garage on these premises. An affidavit of this witness was submitted on the motion for a new trial. She then stated that according to her recollection there was a garage on lands opposite her land. This affidavit does not contradict the testimony of the witness on the trial. It seems that there was a public garage in the vicinity in question. There was some confusion on the trial as to its exact location. The prosecution evidently understood that the location of the premises in question was on the witness Ward's property. The relator and his employee were evidently testifying as to another location. Where the garage was, is of no materiality, except as bearing upon the testimony of the complainant as to his acquaintance with the relator. The relator testified that premises were rented from one DeEsposito. DeEsposito evidently did not testify on the trial, but makes an

732

affidavit that these premises were rented to relator and the relator's brother; that they occupied these premises for about two months in 1920 or 1921 and that he had never seen the complainant, until 1932. The relator lays special stress upon a single quoted excerpt from the judge's charge. The excerpt itself indicates by its phraseology and by indicated omissions that the point there referred to was only one of different points which bore upon the question of guilt. This particular quotation from the charge clearly shows the necessity that this court have before it the complete charge.

■ Under the name of Harry Harvey, relator made an affidavit, which was submitted to the trial court, that he was in business with complainant and not with his brother. The brother made affidavit that complainant was the partner of the relator and he, the affiant, was not. No reason here appears why the brother was not called on the trial. Two other affidavits submitted to the trial judge were by individuals who claimed to have been in business near the garage location. Each speaks of someone known as "Sidney" as a partner of relator. Neither identify complainant as the individual known as "Sidney." In addition, there is another affidavit submitted by the relator under the name of Harvey, in which he detailed the proofs which were submitted in his motion for new trial. In other affidavits it is asserted that the complainant subsequently stated that he was forced by the police to bring the charge of kidnapping against the relator and that the relator was not guilty of the offense. Admissions of this type are to be scrutinized and weighed with great caution. Further, certain of these affidavits do not reach even the level of an admission. Assuming complainant's wife asked the witness Sweeney to testify as a witness for complainant, such statement would clearly be hearsay. That is all there is to the affidavit of affiant Sweeney. Weiner, a fellow inmate with relator in Dannemora Prison in 1933, tells of a conversation claimed to have been had with the complainant in 1931 in which the complainant admitted that he knew nothing about the kidnapping and at the same time asked the affiant to be a witness for him on the trial to corroborate him as complainant. Time and circumstances detract from the weight of this statement and they are vague and

indefinite. In addition to these affidavits there are certain certificates of officers purporting to show that no car was reported as stolen at the time when it is claimed the alleged kidnapping took place. Complainant testified that a car had been reported stolen. Just where the report was made and to whom it was made is not shown. There is also a certificate of the Superintendent of Bureau of Buildings showing a permit for the construction of the DeEsposito Garage.

■ The relator cites and quotes at length from numerous decisions of the courts of the State of New York and federal courts. There can be no disagreement about this statement—that the federal court has jurisdiction if a citizen is denied his constitutional rights in the state courts. The rule applicable here is that laid down in Chambers v. Florida, 309 U.S. 227, 60 S. Ct. 472, 478, 84 L.Ed. 716; Mooney v. Holohan, Warden, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; and numerous citations therein included. In the Chambers case, as the court said, the record "shows, without conflict," that compulsion was effected to frame confessions.

■ No comparable situation is presented here. It is to be noted that the Chambers case went to the Supreme Court on petition for certiorari. In the instant case the relator had the opportunity twice to make such application and did not avail himself of it. The Mooney case, supra, involved the question of the right to a writ where perjured testimony was knowingly presented. The affidavits herein purporting to state alleged admissions fall far short of showing that perjured testimony was knowingly presented, and statements to the effect that the complainant said the police forced him to prosecute, do not amount to statements that the charge was falsely made.

■ This court, in a proceeding of this kind, does not sit as a Court of Appeals. The decisions of courts of states having jurisdiction of the persons are not to be lightly disturbed. United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 46 S. Ct. 1, 70 L.Ed. 138. It is only in exceptional circumstances that the court will interfere where the case has not been taken directly to the Supreme Court from the state's highest court. Reid v. Jones, 187 U. S. 153, 23 S.Ct. 89, 47 L.Ed. 116; see, also, Urquhart v. Brown, 205 U.S. 179, 27 S.Ct. 459, 51 L.Ed. 760. Each of the opinions in

the New York cases cited by the relator are ·in cases on appeal from verdicts and orders denying motions for new trial. In the instant case, as heretofore noted, the Court of Appeals denied leave to appeal to that court after affirmance by the Appellate Division of the decision of the trial judge denying motion for a new trial. The language quoted from these opinions has no bearing upon the question involved here. It is unquestionably true that/the federal court under the due process provision has the authority to discharge a prisoner upon the writ, where it is made to appear that the officials connected with the trial had knowingly procured false testimony or knowingly perpetrated a fraud upon the court or the defendant. As heretofore pointed out, the only affidavit submitted in this connection alleged admissions by the complainant that he had been forced by the police to falsely prosecute the charge. These questions were considered by the trial judge and the affidavits have also been considered in their entirety. Affidavits purporting to contain impeachment testimony alone are insufficient to authorize discharge. It also should be said with reference to certain testimony, that no sufficient reason is shown why it was not discoverable at the time of the trial.

The relator in his petition for writ asks that the trial judge, the prosecuting officer and "necessary witnesses" be subpoenaed for examination on the hearing on this writ. This request was not pressed on the return of the motion for the writ and it is not seen that any case is made for such unusual procedure.